IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MICHAEL JOSEPH SIMS, | ) | |
| | ) | |
| Petitioner, | ) | 4:07CV3088 |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT HOUSTON, | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| Respondent. | ) | |

Deciding that the petitioner's claims have been procedurally defaulted or, in one case, lack merit, I deny Michael Joseph Sims' petition for writ of habeas corpus. Sims will have to serve out his sentence for murder and other serious crimes. I next explain why that is so.

## I.  Background

Sims filed his petition for writ of habeas corpus on April 2, 2007, naming Robert Houston, Director, and Dennis Bakewell, Warden, as Respondents. From their briefs, it appears that the parties now agree that only Mr. Houston is the proper party. Accordingly, I will direct the Clerk to terminate Mr. Bakewell as a party.

Houston has filed a motion for summary judgment supported by the relevant state court records.[1] Sims has responded, and has submitted, among other things, an affidavit attempting to excuse his procedural defaults.[2] The parties have been given

---

[1]Filing Nos. 29 and 30. The contents of filing no. 29 have been uploaded to CM/ECF. That is not true for the contents of filing no. 30. They are in a box held by the Clerk.

[2]Filing No. 32 at CM/ECF pp. 14-16.

an opportunity to fully brief this matter and they have done so.  (Filing Nos. 28, 32 and 33.)

I find that the material undisputed facts are these:

### This Federal Case

1.      This case was commenced on April 2, 2007.  (Filing No. 1.)  The parties agree that the petition was timely.  (Filing No. 8.)

2.      In his petition (filing no. 1 supplemented by filing no. 10) Sims asserts three claims of ineffective assistance of counsel which include numerous parts. Condensed, summarized and restated for clarity and to avoid redundancy, those claims are described below:

### Claim One–Trial Counsel

A.      The petitioner was denied effective assistance of *trial counsel* for the following 17 reasons: (1) failure to protect the petitioner's right to a trial within 6 months under Nebraska law; (2) failure to protect the petitioner's right to a speedy trial under the Sixth Amendment; (3) failure to seek a dismissal under Nebraska law due to the statutory speedy trial violation; (4) failure to seek a dismissal for violation of the petitioner's Sixth Amendment right to a speedy trial; (5) failure to object to prosecutor's statements; (6) failure to object to prosecutor's alternative theory that the petitioner assisted the perpetrator of the crime of murder; (7) failure to object to the failure of the prosecutor to give notice of the alternative theory that the petitioner assisted the perpetrator of the murder; (8) failure to object to jury instruction 5 regarding the aiding and abetting theory; (9) failure to object to jury instruction 5 regarding the definition of aiding and abetting; (10) failure to object jury instructions 5, 6, 7, and 8 regarding the material elements of aiding and abetting; (11) failure to

object to jury instruction 14 because it did not require intent; (12) failure to object to jury instruction 14 regarding reasonable doubt and alternative theories; (13) failure to object to the failure to give a jury instruction on self-defense; (14) failure to object to the failure to give a jury instruction on uncorroborated testimony of an accomplice; (15) failure to object to the verdict form regarding alternative theories; (16) failure to object to charging the jury prior to closing arguments; and (17) failure to object to the failure of the trial court to use the proper standard when ruling on motion for directed verdict. (Filing No. 1 at CM/ECF pp.8-10 (ground one, parts 1-15) and filing no. 10 at CM/ECF p. 1 (ground one, parts 16-17).)

### *Claims Two and Three–Appellate Counsel*

B.      The petitioner was denied effective assistance of appellate counsel (who was different than trial counsel) because counsel on appeal failed to assign as error the ineffective assistance of trial counsel detailed in claim one and because appellate counsel failed to challenge the standard of review used by the Nebraska Supreme Court to determine the sufficiency of evidence.  (Filing No. 1 at CM/ECF pp. 30, 32 and filing no. 10 at CM/ECF pp. 1-2.)

3.      For purposes of the motion for summary judgment only, I assume that the petitioner's affidavit is true when it states that he completed the ninth grade in school, that he subsequently obtained a "GED" degree, that his lowest grades were in reading, that the prison law library has numerous volumes of state and federal reporters and self-help manuals, that he was allowed no more than 1.5 hours a day in the law library, that he received the assistance of inmate legal aids, that the legal aids "were not taught or trained by a person who was trained in the law by an accredited learning institution[,]" and that the legal aids "were not supervised by a qualified professional[.]" (Filing No. 32 at CM/ECF pp. 14-16.)

### *The Trial*

4.      A jury found Sims guilty of murder in the first degree (count 1), use of a firearm to commit a felony (count 2), attempted murder in the first degree (count 3), and use of a firearm to commit a felony (count 4).  (Filing No. 29-6, Attach. 5, at CM/ECF pp. 22-23.)   At the trial, the defendant was represented by Thomas McKenney.  (Filing No. 29-5, Attach. 4, at CM/ECF p. 34.)  Sims had gotten into a dispute with his first retained lawyer, James Martin Davis, because Davis, who is a very experienced criminal defense lawyer, suggested that Sims enter a guilty plea. (Filing No. 30, BOE VII at p. 54.)  As a result, family and friends recommended that Sims hire McKenney, another highly experienced criminal defense lawyer, and Sims did as they suggested.  (*Id.* at 55-58.)

5.      The evidence against Sims was strong, although not ironclad.   Taken from the opinion of the Nebraska Supreme Court on direct appeal, and viewed in the light most favorable to the jury verdict, that evidence can fairly be summarized as follows:

A.      On March 24, 1997, Michael J. Sims, then a 20-year-old resident of Omaha, Nebraska, purchased a Maverick 12 gauge shotgun, a Norinco Model SKS 7.62-mm x .39-caliber semiautomatic assault rifle, and ammunition for each from Arms & Ammo Sporting Goods in Fremont, Nebraska.  On the following day, two men drove into a residential neighborhood in Omaha and fired these weapons at Nathan Coleman and William Booth.  Both victims were injured, Coleman fatally. An autopsy revealed that Coleman sustained large wounds to his head and right leg caused by high-velocity rifle bullets. Additionally, he sustained nonfatal shotgun wounds to both legs.  The cause of Coleman's death was determined with reasonable medical certainty to be "a perforating gunshot wound of the head, with massive comminuted fractures of the skull and marked lacerations and disruption of the brain."   The shotgun and assault rifle were never recovered.   At trial, Sims

acknowledged that the spent cartridges found at the scene of the shooting were from shells that he loaded into the clip of the SKS assault rifle.  The gunshop employee who sold the assault rifle to Sims testified that the casings were from "full metal jacket" rounds not typically used for hunting purposes.

B.     Christopher Cannon, who was 22 years old and a previously convicted felon at the time of trial, testified that on five to eight occasions, he obtained marijuana from Sims, sold it to others, and then paid a portion of the proceeds to Sims and retained the remainder for himself. He characterized this transaction as "fronting," which a law enforcement witness confirmed to be a common means of marketing illicit drugs.  Cannon testified that he obtained marijuana from Sims under a "fronting" arrangement a day or two before March 25, 1997.  Cannon testified that on the afternoon of March 25, he had a telephone conversation with a fellow by the last name of Gatewood during which Gatewood expressed interest in purchasing one-half pound of marijuana from him.  Cannon contacted his friend Harry Winefeldt and the two men went to meet Gatewood to do the drug deal.  However, during the meeting, Gatewood snatched the marijuana and ran off without paying for it.

C.     Cannon and Winefeldt then proceeded to the automotive garage where Sims worked. When they arrived there, Cannon went inside and found Sims.  The two men went outside, and Cannon informed Sims of the theft of the marijuana by Gatewood.  Cannon testified that Sims responded by stating, "Let's get 'em. Let's go." The three men–Cannon, Winefeldt and Sims–then left in a Blazer.  Cannon testified that Sims briefly entered his home and returned to the vehicle carrying a box which contained a 12 gauge shotgun and an SKS assault rifle.  Leaving Cannon behind because his wife had called and indicated that she might be going into labor, Sims announced, "I'll handle this."  He and Winefeldt drove off in the Blazer.   Sims was driving.

D.     According to Winefeldt, after spotting Gatewood walking nearby, Sims drove to the middle of an intersection.  Winefeldt testified that as two or three individuals approached the Blazer, Sims took the assault rifle from the floor of the Blazer and instructed Winefeldt to use the shotgun to shoot the approaching men before the men could shoot Winefeldt and Sims.  Although he did not observe any weapons in the possession of the individuals who were approaching the vehicle, Winefeldt observed them raise their shirts and display gang signs.  Winefeldt fired three or four shots from the shotgun, hitting both Booth and Coleman, and then opened the door of the Blazer. Winefeldt testified that he mistook Coleman for Gatewood because both were of similar build and complexion and wore their hair in a similar fashion.  Winefeldt testified that after firing the shotgun, he heard shots from the assault rifle and observed Sims outside the vehicle firing at Coleman and Booth.  Coleman, who was attempting to get away after being shot by Winefeldt, fell to the ground when Sims fired the assault rifle.  Sims and Winefeldt then drove off.

E.     Winefeldt testified that after Sims dropped him off at his home, he called Cannon using a pager code indicating "homicide." Cannon arrived at Winefeldt's home and observed him changing his shirt and taking the braids out of his hair. While the two proceeded to the garage where Sims worked, Winefeldt told Cannon about the shootings. Sims and Shannon Johnsen were in the garage when Cannon and Winefeldt arrived.  According to Cannon and Winefeldt, Sims gave Cannon a detailed verbal account of the shootings, laughing as he described the shots from the assault rifle striking Coleman's body.  Johnsen confirmed that he saw Sims, Cannon and Winefeldt converse in the corner of the garage.[3]

F.     Sims testified and made admissions. Although denying that he was involved in the actual shooting, and implying that Cannon was the shooter, he

---

[3]He could not hear what was said, however.  (Filing No. 30, BOE V. at pp. 1137-1138.)

-6-

admitted that he purchased the shotgun for himself and the assault rifle for another person and that he completed the documentation for both weapons because the other person did not have his identification present.  He also admitted that after Cannon approached him and told him that he had been "jacked" and wanted to borrow the weapons, Sims retrieved them for Cannon.  Sims further admitted that he loaded the assault rifle and Sims additionally admitted that he determined that Winefeldt was familiar with the shotgun, which was already loaded with five rounds.

G.     Although no witness to the shooting other than Winefeldt positively identified Sims as the person who fired the assault rifle, one witness testified that the shooter resembled Sims.  In addition, several witnesses gave physical descriptions of the shooter which generally matched Sims' appearance more closely than that of Cannon.

H.   Winefeldt pled guilty to manslaughter and use of a weapon to commit a felony.  Winefeldt had not yet been sentenced for these offenses at the time of his testimony at Sims' trial.  However, the State agreed not to oppose a recommendation of 13 to 16 years in prison if Winefeldt testified truthfully.

*State v. Sims*, 603 N.W.2d 431, 434-442 (Neb. 1999) (*Sims I*.)

6.     The petitioner was sentenced to life in prison on the murder charge, 20 to 25 years on the attempted murder charge, and 10 to 12 years on both of the gun charges.  (Filing No. 29-6, Attach. 5, at CM/ECF p. 30.)  The sentences were to be served partially consecutive and partially concurrent.  (*Id.*)

-7-

### *The Direct Appeal*

7.      Trial counsel was allowed to withdraw, and new counsel was appointed to prosecute the direct appeal.  (Filing No. 29-6, Attach. 5, at CM/ECF p. 33.)   That lawyer was Scott Calkins.  (*Id.*)

8.      Mr. Calkins prepared a brief to the Nebraska Supreme Court and asserted 10 assignments of error.  (Filing No. 29-7, Attach. 6, at CM/ECF pp. 38-40.)   Those assignments of error are set forth below:

I.      The state failed to present sufficient evidence to convict the defendant of any of the crimes for which he was charged.

II.     The state failed to present sufficient evidence to convict the defendant of the crime of attempted first degree murder.

III.    The trial court erred in overruling the defendant's motion for directed verdict presented at the close of evidence.

IV.    The trial court erred in failing to grant the defendant's motion for new trial.

V.     The defendant's right to effective assistance of counsel pursuant to Article I sections 3 and 11 of the Constitution of the State of Nebraska and the Sixth and Fourteenth Amendments to the United States Constitution were violated in that defense counsel failed to move to discharge the defendant pursuant to *Neb. Rev. Stat.* § 29-1208 (Reissue 1995).

VI.    The defendant's right to effective assistance of counsel pursuant to Article I sections 3 and 11 of the Constitution of the State of Nebraska and the Sixth and Fourteenth Amendments to the United States Constitution were violated in that defense counsel failed to move to discharge the defendant pursuant to the

defendant's right to speedy trial under the 6th Amendment to the United States Constitution.

VII.   The trial court committed plain error in failing to properly instruct the jury with respect to uncorroborated accomplice testimony.

VIII.  The trial court committed plain error in failing to properly instruct the jury with respect to self-defense.

IX.    The defendant's right to effective assistance of counsel pursuant to Article I sections 3 and 11 of the Constitution of the State of Nebraska and the Sixth and Fourteenth Amendments to the United States Constitution were violated in that defense counsel failed to request a jury instruction regarding uncorroborated accomplice testimony.

X.     The defendant's right to effective assistance of counsel pursuant to Article I sections 3 and 11 of the Constitution of the State of Nebraska and the Sixth and Fourteenth Amendments to the United States Constitution were violated in that defense counsel failed to request a jury instruction on the issue of self-defense.

(*Id.*)

9.      Justice Stephan wrote the opinion denying the appeal for a unanimous Nebraska Supreme Court.  His opinion was thorough.  He found that the evidence was sufficient to convict the defendant of murder, attempted first degree murder and use of a deadly weapon to commit a felony.  *Sims I*, 603 N.W.2d at 443-445.  Next, Justice Stephan decided that the claims of ineffective assistance of trial counsel should not be addressed because the record was insufficient to do so.[4]  Finally, the

---

[4]Under Nebraska law, when an issue regarding ineffective assistance of counsel has not been presented to the trial court, but the issue is raised on direct appeal (as in cases where new appellate counsel attacks trial counsel), the Nebraska courts will consider and resolve such a claim when the record is sufficient to do so.  Indeed,

Justice concluded that there was no plain error in failing to instruct the jury on the uncorroborated testimony of an accomplice or by failing to instruct on the issue of self-defense.   *Id.* at 445-446.   In particular, Justice Stephan observed that the testimony of the accomplice was not uncorroborated.   In any event, the trial court gave a detailed instruction that focused the jury's attention on important aspects of evaluating credibility such as the witness's "interest or lack of interest in the result of the case." *Id.*   Justice Stephens further observed that the jury was instructed with respect to both the murder and attempted murder charges that the State's burden included proving that the defendant did not act in self-defense.   *Id.* at 446.   Finally, the Justice noted that Sims' theory of the case was not self-defense, "but that he did not shoot at them at all and was not even present when the shooting occurred." *Id.*

### *The First Post-Conviction Action*

10.   On October 13, 2000, Sims filed his post-conviction motion in the District Court of Douglas County, Nebraska.   (Filing No. 29-11, Attach. 10.)   He requested the appointment of counsel.   (Filing No. 29-11, Attach. 10, at CM/ECF p. 39.)   As noted below, and consistent with Sims' prior inability to get along with his

---

where there is new appellate counsel, issues related to trial counsel's ineffective performance must be raised on direct appeal or they will be procedurally barred if later brought in a state post-conviction action. *See*, *e.g.*, *State v. Bennett*, 591 N.W.2d 779, 782-783 (Neb. 1999) (where the defendant had new counsel for his direct appeal, defendant's post-conviction motion was procedurally barred due to his failure to litigate on direct appeal of robbery and assault conviction claims of ineffective assistance of trial counsel due to attorney's fraudulent readmission to the bar, failure to object to evidence of defendant's prior bad acts and failure to call alibi witness). If the record is not sufficient to decide the claim on direct appeal, the defendant must litigate the claim that his trial counsel was ineffective in a separate state post-conviction action so that a proper record can be made. *Id.* ("Although an appellate court will not address an ineffective assistance of counsel claim on direct appeal when the matter necessitates an evidentiary hearing, an appellate court's refusal to do so does not bar a later motion for postconviction relief.") (internal citation omitted).

counsel, three lawyers were appointed to represent Sims at various times during the case.  An amended post-conviction motion was filed by Tracy Zitnick, appointed counsel for Sims, but that motion was withdrawn at the request of Sims.  (Filing No. 30, Attach. C, at "Order" dated July 27, 2001.)[5]  Zitnick and another lawyer, F. Michael Mathews, were allowed to withdraw (filing no. 30, Attach. C, at "Order" dated July 27, 2001;  letters dated January 13, 2002 and January 8, 2002) and Jason Troia was appointed to represent Sims.  (Filing No. 30, Attach. C, at "Application for Attorney Fees" dated June 13, 2006.)  Troia proceeded to aggressively represent Sims through the conclusion of the post-conviction action and on appeal.

11.     The original post-conviction motion filed by Sims was the pleading upon which the action proceeded.   In that motion, Sims raised two ineffective assistance of counsel claims regarding his trial counsel.   Condensed and summarized, he attacked his trial counsel for his failure to move to dismiss for speedy trial violations and for his failure to object to statements of the prosecutor.  (Filing No. 29-11, Attach. 10, at CM/ECF p. 30.)   Sims also attacked the lawyer who represented him on direct appeal.   Sims claimed that his appellate lawyer was ineffective for failing to assign as error the ineffective assistance of trial counsel described in his first claim for post-conviction relief.  (Filing No. 29-11, Attach. 10, at CM/ECF p. 38.)

12.     The prosecutor and defense counsel in Sims' underlying criminal case were deposed.   Among other things, they were asked questions about two continuances that trial counsel had requested.  The prosecutor explained that trial counsel requested two separate continuances because the prosecutor had endorsed "late witnesses" on one occasion shortly before trial and on the other occasion trial

_____

[5]Unfortunately, some of the records submitted by Respondent (that were not uploaded to CM/ECF) lack sequential pagination.  In the future, counsel should be sure to properly paginate the records manually if the material is not uploaded to CM/ECF.  Without such pagination, it is difficult for a judge to refer to specific portions of the record.

counsel requested a continuance because of the last-minute decision of Mr.
Winefeldt, the co-defendant, to cooperate with the State and testify against Sims.
(Filing No. 30, Attach. "Depositions," at deposition of Darryl R. Lowe, at p. 18.)
Trial counsel confirmed that he requested the continuances for the reasons recounted
by the prosecutor and he stated that Sims was consulted and agreed with both
continuance requests. (Filing No. 30, Attach. "Depositions," at deposition of Thomas
P. McKenney on September 1, 2004, at p. 10 and at deposition of Thomas Patrick
McKenney on July 7, 2005, at 8-10.)

13.    An evidentiary hearing was held on July 13, 2005. (Filing No. 30, BOE
VII.)    The primary focus at that hearing was the claim that trial counsel was
ineffective for failing to move for dismissal due to the speedy trial violations. Mr.
Troia, counsel for Sims, first attempted to have the trial judge recuse himself so the
judge could be called as a witness. That request was denied. (Filing No. 30, BOE
VII, at pp. 7-10.) The depositions recounted above were offered and received into
evidence. (Filing No. 30, BOE VII, at pp. 13-14.) Sims testified. As for the first
continuance (due to the endorsement of "late witnesses"), Sims testified that, while
he did not agree with the continuance, he just "sat there" and did not formally object
when told by his lawyer that the lawyer needed more time to prepare and was seeking
a continuance. (Filing No. 30, BOE VII, at pp. 36-37.)    As for the second
continuance (regarding Winefeldt), Sims testified that he was not consulted and only
learned of the continuance after the fact. (Filing No. 30, BOE VII, at pp. 33-35.)

14.    On February 7, 2006, the judge denied the post-conviction motion in a
thoughtful opinion spanning eleven pages. (Filing No. 29-11, Attach. 10, at CM/ECF
pp. 56-66 (the opinion was filed February 8, 2006).) First, the judge found that trial
counsel was not ineffective for failing to move for dismissal due to a speedy trial
violation. The judge concentrated on the second continuance regarding Winefeldt
because the state speedy trial clock would not have run before then. The judge ruled
that trial counsel's decision to seek a continuance to carefully prepare for the

testimony of Winefeldt amounted to a reasonable trial decision on the part of counsel and counsel's performance was therefore not deficient. Because Sims could not prevail on the first prong of the two-part test in *Strickland v. Washington*, 466 U.S. 668 (1984), the judge found no need to address the question of whether Sims suffered prejudice. (Filing No. 29-11, Attach. 10, at CM/ECF pp. 59-63.) Secondly, the judge decided that trial counsel's failure to object to stray questions that might have implicated Sims' right to post-arrest silence guaranteed by *Doyle v. Ohio*, 426 U.S. 610, 619 (1976), did not amount to deficient performance on the part of counsel. Given the strength of the case against Sims and the fleeting nature of the questions, any failure to object was not malpractice because any error in the prosecutor's questioning was harmless beyond a reasonable doubt. (Filing No. 29-11, Attach. 10, at CM/ECF pp. 63-66.)

### *The Post-Conviction Appeal*

15.     Mr. Troia prosecuted the post-conviction appeal for Sims.  He filed a brief in which he raised two issues. (Filing No. 29-12, Attach. 11, at CM/ECF pp. 9-36.)  First, he argued that the judge should have recused himself so the judge could be called as a witness for Sims on the speedy trial claim. (Filing No. 29-12, Attach. 11, at CM/ECF pp. 21-23.)  Second, he argued that trial counsel was ineffective for failing to move for dismissal due to the speedy trial violation (filing no. 29-12, attach. 11, at CM/ECF pp. 23-34) and because trial counsel failed to object to questions posed by the prosecutor that implicated Sims' right to remain silent as guaranteed by *Doyle*. (Filing No. 29-12, Attach. 11, at CM/ECF pp. 34-36.)

16.     On December 22, 2006, the Nebraska Supreme Court denied Sims' appeal of the decision denying post-conviction relief.  In another thorough opinion, this time written by Justice McCormack, the Nebraska Supreme Court carefully reviewed Sims' claims.  First, Justice McCormack ruled that trial counsel was not ineffective for failing to move to dismiss for violation of Sims' speedy trial rights

either under Nebraska statutory law or federal constitutional law.  *State v. Sims*, 725 N.W.2d 175, 183-187 (Neb. 2006) (*Sims II.*)  For among other reasons, this was true because any delays were necessary so counsel could be properly prepared and also because the delays did not harm Sims' defense.  *Id.* at 187.  In particular, the Justice noted that trial counsel learned of Winefeldt's decision to cooperate against Sims only a day or so before trial was scheduled to begin.  *Id.* at 180.  Second, Justice McCormack ruled that Sims' claim about the failure to make a *Doyle* objection was procedurally barred.  The Justice came to this conclusion because appellate counsel in the direct appeal did not raise the issue despite the fact that the issue was known or was apparent and because post-conviction counsel did not argue the issue of ineffective assistance of appellate counsel to the post-conviction judge and the judge did not address that issue.  *Id.* at 187-188.  Finally, Justice McCormack wrote that the post-conviction judge properly refused to recuse himself.  *Id.* at 188-189.

### The Second Post-Conviction Action

17.    After filing this federal action, and on June 29, 2007, Sims filed another post-conviction motion in the District Court of Douglas County, Nebraska.  (Filing No. 30, Attach. C, at "Verified Motion to Vacate and Set Aside Judgment and Sentence.")   In that motion, Sims alleged ineffective assistance of trial counsel and ineffective assistance of appellate counsel apparently attempting to raise all the claims now raised in this case.

18.    On August 10, 2007, I refused Sims' request to "stay and abey" this federal proceeding while he pursued the second post-conviction motion.  (Filing No. 17.)

19.    On November 8, 2007, after a telephone hearing at which Sims was allowed to participate, the judge denied the second motion.   The judge ruled that because the motion failed to show on its face that the basis relied upon for relief was

-14-

not available to Sims at the time the original motion was filed, the new motion must be denied as an unauthorized successive motion.[6]  (Filing No. 29-14, Attach. 13.)

## II.  ANALYSIS

Except for one, all of Sims' claims are procedurally defaulted and he has not excused those defaults.   The claim that is not procedurally defaulted lacks merit. Before explaining myself in somewhat more detail, I pause to make a more general point.   Six lawyers worked hard to protect Sims' rights.   The Nebraska courts carefully scrutinized Sims' case and found no reason to grant him relief.   Overall, Sims' has nothing to complain about and the following only illustrates that point.

### A.  Trial Counsel Was Not Ineffective For Seeking More Time To Prepare

The one claim that is not procedurally defaulted relates to Sims' assertion that his trial counsel was ineffective because counsel should have moved to dismiss the case and having failed to do so, Sims' state and federal speedy trial rights were violated.   Sims' complaint was carefully reviewed by the Nebraska courts after an evidentiary hearing where he was represented by zealous post-conviction counsel.

---

[6]This ruling was entirely consistent with Nebraska law.  Under Nebraska law, a "motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *State v. Lotter*, 664 N.W.2d 892, 911 (Neb. 2003).  *See also Akins v. Kenney*, 410 F.3d 451, 455-456 n.1 (8th Cir. 2005). In addition, as a general rule, Nebraska courts "will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion. The need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity." *State v. Moore*, 718 N.W.2d 537, 542 (Neb. 2006) (death penalty case holding that constitutional challenge to statutorily mandated method of execution was procedurally barred) (internal citation omitted), *cert. denied*, 127 S. Ct. 1134 (2007).

When the Nebraska courts are given the deference that they are due, there is no room for a different conclusion.

### 1.  Standard Of Review

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the facts and the law.  *See* 28 U.S.C. § 2254(d).

With regard to the deference owed to factual findings of a state court's decision, a federal court is bound by those findings unless the state court made a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

With regard to the deference owed to the conclusions of law, a federal court may not grant a writ of habeas corpus unless the state court's legal conclusion "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

### 2.  Federal Law On Ineffective Assistance Of Counsel

In general, to be eligible for habeas relief based on ineffective assistance of counsel, a petitioner must meet the two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

-16-

He or she must first establish that counsel's representation was constitutionally deficient, which requires a showing that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). Because of the "'distorting effects of hindsight,'" there is highly deferential scrutiny of counsel's performance and the courts indulge "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Link v. Luebbers*, 469 F.3d 1197, 1202 (8th Cir. 2006), *cert. denied*, 128 S. Ct. 488 (2007) (quoting *Strickland*, 466 U.S. at 689).

If the claimant establishes the first element, the petitioner must then show that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. This requires proving that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been more favorable to the petitioner. *Id.* at 694-695. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Wiggins*, 539 U.S. at 534. Merely showing a conceivable effect is not enough. *Winfield v. Roper*, 460 F.3d 1026, 1033 (8th Cir.2006), *cert. denied*, 127 S. Ct. 2256 (2007).

It is also true that "review of the state court determination that [the petitioner] has not proved an ineffective assistance of trial counsel claim . . . is 'twice deferential: we apply a highly deferential review to the state court decision; the state court, in turn, is highly deferential to the judgments of trial counsel.'" *Link*, 469 F.3d at 1202 (quoting *Nooner v. Norris*, 402 F.3d 801, 808 (8th Cir. 2005). Thus, when a state court has carefully examined and then denied a claim of ineffective assistance of counsel, a subsequent federal challenge is likely to fail.

### 3. Deference Is Due In This Case

The Nebraska Supreme Court, applying the appropriate legal standards, determined that trial counsel did not engage in malpractice by seeking more time to

prepare instead of moving to dismiss. Among other things, the court sensibly decided that a lawyer in a murder case should not be faulted for requesting more time to prepare to challenge the testimony of the sole percipient witness who decides at the last minute to turn against the lawyer's client. That ruling is entirely consistent with federal law. Indeed, when defense counsel agrees to, or makes a motion for, a continuance in order to be fully prepared, counsel will almost never be held to have provided ineffective assistance of counsel. *See*, *e.g.*, *Nazarenus v. United States,* 69 F.3d 1391, 1394 (8th Cir. 1995) (inasmuch as the defendant denied his guilt, defense counsel did not provide ineffective assistance when he agreed to continuances requested by the government for purpose of DNA testing of various evidence in sexual abuse case); *United States v. Antwine,* 873 F.2d 1144, 1148 n. 8 (8th Cir. 1989) (defense counsel moved for a continuance without consulting his client after his client was found competent to stand trial because a superseding indictment had been filed while the defendant was being evaluated[7]; stating that "[w]e reject [defendant's] suggestion that defense counsel's request for a continuance constituted ineffective assistance of counsel . . . . Although defense counsel should have consulted [his client] before moving for a continuance, counsel's request represented his effort to provide the most effective assistance possible by allowing adequate time to prepare a defense."). In short, Sims has wholly failed to provide an adequate factual or legal basis for denying the Nebraska Supreme Court the deference it is due under 28 U.S.C. § 2254.

---

[7]Although it does not make a difference here, *see*, *e.g.*, *Stewart v. Nix,* 972 F.2d 967, 970 (8th Cir. 1992) (motions for continuances "are largely left to trial counsel's discretion"), Sims' lawyer testified that Sims agreed to or acquiesced in all the continuances. To the extent the Nebraska courts choose to believe counsel, there is no basis for overturning that decision.

## B.  All of Sims' Other Claims Are Procedurally Defaulted

Respondent argues that all the other claims are procedurally defaulted (1) because Sims either (a) failed to present them to the Nebraska Supreme Court at any time or (b) failed to fully present them to the Nebraska Supreme in a timely fashion; and (2) because Sims cannot now present those claims to the Nebraska Supreme Court because Nebraska law bars repetitive litigation.  Sims does not forcefully dispute the Respondent's assertion[8] except to argue that his defaults should be excused.  I agree with Respondent that all of Sims' other claims are procedurally defaulted under Nebraska law and he cannot return to the Nebraska courts under Nebraska law.  I also find and conclude that Sims has failed to excuse his defaults.

### 1.  Procedural Default

In *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999) (holding that in order to satisfy exhaustion requirement, prisoner was required to present his claims to state supreme court for discretionary review), the Supreme Court explained the habeas exhaustion requirement as follows: "Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before filing for federal habeas relief.  *Id.* at 845.  Exhaustion requires that a prisoner "fairly present" the substance of each federal constitutional claim to the state courts before seeking federal habeas relief.  *Id.* at 844.  If a habeas petitioner fails to do so in a timely fashion, and there is no opportunity for a "redo" in the state courts, then the claim is

---

[8]Sims' filing of the second post-conviction action where he unsuccessfully tried to resurrect his defaulted claims is stark evidence of the validity of Respondent's argument.

exhausted by "procedural default." *Id.* at 848.

If a petitioner fails to "fairly present" his claim to the state courts[9], and he can no longer present the claim to the state courts because, for example, a state court rule prohibits serial litigation, then the federal court will be precluded from considering the claim unless the petitioner fits into one of two exceptions. *See, e.g.*, *Winfield v. Roper*, 460 F.3d 1026, 1034 (8th Cir.2006), *cert. denied*, 127 S. Ct. 2256 (2007). That is, the petitioner must demonstrate "cause and prejudice" or a "miscarriage of justice" (like "actual innocence") in order to prosecute a claim when that claim has not been, and cannot be, fully and fairly asserted in the state courts. *Id.*

## 2.   The Defaults Have Not Been Excused

Sims makes no real attempt to show that he is "actually innocent" or that there was some other "miscarriage of justice."   Even if he had pressed such a claim, there is no basis for affording him relief thereon.   On the other hand, after submitting an affidavit, Sims does rely on the "cause" and "prejudice" exception.   I am not persuaded by that argument either, but that decision requires slightly more explanation.

Basically, Sims argues that because he lacks a good education, because he was only allowed a limited amount of time per day in the law library, and because the legal aides were not very good, his defaults should be excused.   Taking those facts as true, I reject Sims' argument.

Since the undisputed record establishes that (1) at his request, Sims was afforded a new lawyer on the post-conviction action; (2) Sims has a general

---

[9]"Fair presentment" requires a habeas petitioner to present the claim to the relevant state supreme court if such review is part of the established appellate process. *See*, *e.g.*, *O'Sullivan v. Boerckel*, 526 U.S. at 845-846.

equivalency diploma; (3) Sims was allowed up to 10 hours per week in a law library; (4) the law library has adequate resources (including "how to" manuals) and (5) Sims had the assistance of inmate legal aides even though they may not have been very good, Sims has not come close to meeting the "cause" standard for excusing procedural default under federal law. *See*, *e.g.*, *Baker v. Norris,* 321 F.3d 769, 771 (8th Cir. 2003) (refusing to toll statute of limitations and holding that prison rule limiting prisoner to 2 hours at a time in the library and requiring inmates to sign up in advance did not establish that an inmate sentenced to life in prison was denied adequate access to a law library); *Lamp v. Iowa*, 122 F.3d 1100, 1105 (8th Cir. 1997) (procedural default not excused where habeas petitioner was provided with counsel on his state post-conviction action); *Thurmond-Green*, 2006 WL 1358670 (E.D. Ark. 2006) ("It is well-settled that pro se status, lack of education, below-average intelligence or any unfamiliarity with intricacies of the law or legal procedure are not sufficiently *external* to a petitioner to constitute cause excusing procedural default.") (citations omitted; italics in original).

Three additional observations are in order. First, the "procedural default doctrine and its attendant 'cause and prejudice' standard . . . apply alike whether the default in question occurred at trial, on appeal, or on state collateral attack." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (cause for procedural default of another federal claim could itself be procedurally defaulted). This case presents examples of defaults occurring in a direct appeal, in a post-conviction action before the district court and in an appeal of the denial of post-conviction relief.

Second, a federal habeas court is barred from considering an ineffective assistance of counsel claim as "cause" for the procedural default of another claim if the ineffective assistance claim has itself been inexcusably procedurally defaulted. *Id.* at 451-452. Thus, because Sims has never presented the ineffective assistance of appellate counsel claims to the Nebraska Supreme Court, he cannot use his appellate

-21-

counsel's alleged errors regarding the failure to attack trial counsel as an excuse to get at the defaulted claims regarding trial counsel.

Third, because Sims was not entitled to counsel in the post-conviction action as a matter of constitutional law, Sims cannot use the supposed malpractice of his post-conviction counsel in failing to attack the alleged failures of his appellate counsel, or, for that matter, the alleged failures of his trial counsel, as an excuse for reviving the defaulted claims. *See, e.g., Coleman v. Thompson,* 501 U.S. 722, 752-756 (1991) (in a murder case, holding that there is no constitutional right to attorney in state post-conviction proceeding; consequently, habeas petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings; because petitioner had no right to counsel to pursue his appeal in state habeas proceeding, any attorney error that led to default of petitioner's claims in state court could not constitute cause to excuse default in federal habeas proceeding); *Taylor v. Bowersox,* 329 F.3d 963, 971 n. 13 (in a death penalty case, holding that errors made by counsel representing petitioner in application for state post-conviction relief are not actionable ineffective assistance as cause to excuse procedural defaults for habeas purposes).[10]

### III. CONCLUSION

There are, and should be, severe consequences for killing someone with a semiautomatic assault rifle during a street fight over a drug deal gone wrong. Sims will suffer those severe consequences because a jury of his peers found him guilty while he was represented by competent and dedicated counsel, because, after the trial, the Nebraska courts carefully examined whether his rights were respected, and because he is not entitled to relief under the federal habeas corpus statute.

---

[10]Because Sims cannot show "cause" to excuse the procedural default, I decline to determine whether he could meet the second requirement of "prejudice."

-22-

IT IS ORDERED that:

1.      The Clerk shall terminate Mr. Bakewell as a party.

2.      Petitioner's motion to proceed in forma pauperis (filing no. 22) is granted.  However, the petitioner shall not be entitled to a refund for the $5.00 filing fee that was paid prior to the filing of the motion.  (*See* docket text for filing no. 1.)

3.      Respondent's motion for summary judgment (filing no. 27) is granted.

4.      The petition for writ of habeas corpus (filing no. 1 supplemented by filing no. 10) is denied and the petition is dismissed with prejudice.  A separate judgment will be entered.

May 21, 2008                          BY THE COURT:

                                      *s/Richard G. Kopf*
                                      United States District Judge